# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TERRY SCHULENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-16-623-HE |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Defendant has moved to exclude the proposed testimony of Alan Blackwell on Daubert grounds. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

"In accord with Rule 702, the Supreme Court has determined that the [trial judge] 'must ensure that any and all scientific testimony or evidence is not only relevant, but reliable.'" Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1232 (10th Cir. 2004) (quoting Daubert, 509 U.S. at 589). "This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts." Goebel v. Denver and Rio Grande W. R.R. Co., 215 F.3d 1083, 1087 (10th Cir. 2000) (citing Daubert, 509 U.S. at 592).

In determining the admissibility of expert testimony, the court initially must decide whether the proposed expert "is qualified by 'knowledge, skill, experience, training, or education' to render an opinion." United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en banc*) (quoting Fed.R.Evid. 702). Further, the expert's knowledge, skill,

experience, training, or education must be relevant to the facts at issue. Ralston, v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001). The court then conducts a two-part inquiry, determining first if the expert's proffered testimony has "'a reliable basis in the knowledge and experience of his [or her] discipline.'" Bitler 400 F.3d at 1233 (quoting Daubert, 509 U.S. at 592). In making this determination, the court must decide "'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* at 1233 (quoting Daubert, 509 U.S. at 592-93). Second, the court must inquire "into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Id.* at 1234 (quoting Daubert, 509 U.S. at 597).

"The plaintiff need not prove the expert is indisputably correct . . . . Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999) (citations omitted). The court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

In this case, plaintiff claims he was injured on January 11, 2014, while working for defendant as an engineer operating a train. He asserts that the locomotive in which he was riding "bottomed out" and bounced, resulting in serious bodily injury to him and/or the aggravation of a preexisting condition. It is undisputed that the track in question was operated by defendant as if it was a Class 4 track, due to applying an internal 55 mph speed

2

limit. It is also undisputed that, on the date of the incident, defendant operated the track under a "slow order" which limited freight speed to 40 mph, the maximum freight speed for a Class 3 track. Doc. Nos. 38-3, p. 1; 51-1, p. 18; *see also*, 49 C.F.R. § 213.9. Plaintiff testified that he was traveling 38 mph at the time of the incident. Doc. #39-1, p. 19.

In response to plaintiff's report of the bottoming out incident, defendant reduced the maximum allowable speed of the track to 25 mph (the maximum freight speed for Class 2 track) and had the track inspected. After the inspection, the maximum speed was raised back up to 40 mph. Doc. Nos. 38-3, p. 1; 38-6, p. 1.

The inspection of the track was conducted by Lawrence Wallace, an inspector for defendant. His inspection indicated a one and five-eighths (1 5/8ths) inch deflection or dip in the track in the area where the incident occurred. It is undisputed that a Class 4 track has a maximum permissible deviation of 2 inches. Class 3 and Class 2 tracks have maximum permissible deviations of 2 1/4 inches and 2 3/4 inches respectively.

Against this backdrop, Mr. Blackwell generated an expert report dated July 13, 2017, which was timely under the court's scheduling order. The report was lengthy, but composed almost entirely of excerpts from federal railroad safety standards and various manuals. The report made little or no effort to relate the various standards to Mr. Blackwell's conclusions. But, reduced to their essentials, the pertinent opinions that Mr. Blackwell seeks to offer are these: (1) that defendant failed to maintain track geometry conditions such that a train could safely and comfortably operate on it, (2) that defendant failed to take proper remedial steps, (3) that defendant did not properly maintain the ballast for the affected section of track, and (4) that defendant failed to properly inspect the track.

3

Defendant then filed the present motion to exclude Mr. Blackwell's opinions. Defendant does not challenge Mr. Blackwell's qualifications in general, but rather challenges whether there is a reliable basis for the conclusions he drew. As to certain conclusions, defendant challenges whether Mr. Blackwell employed any discernable methodology in reaching his conclusions or whether his opinions were just of the *ipse dixit* variety.

With respect to the track geometry opinion, defendant argues that Mr. Blackwell acknowledged but then ignored the fact that the track in question was fully compliant with the applicable federal standards. Further, defendant notes Mr. Blackwell's opinions simply ignored the apparently undisputed fact that defendant did take remedial steps, including reducing the authorized speed for the affected area of track, after being advised previously of a problem. As to the ballast opinion, relating to the condition of the roadbed under the rails, defendants point out that Mr. Blackwell's conclusions were based on an aerial photo of the general area taken some eight months before the incident that is the basis for plaintiff's claim, which photo appears to show little or nothing about the condition of the ballast. The second basis was a video taken from the locomotive. Defendant notes the train was traveling at least 38 mph, that the camera was twelve to fifteen feet above the track over the front of the locomotive, and that the video therefore provides little or no basis for evaluating the condition of the ballast. The final basis for Mr. Blackwell's ballast opinion was his visual inspection of the track. As defendant notes, that inspection was over <u>three years</u> after the incident. Finally, as to the track inspection opinion, defendant argues

4

Mr. Blackwell's opinion simply ignored, or somehow assumed away, the apparently undisputed evidence that track inspections were conducted.

All of defendant's objections appear to be substantially well-founded. Mr. Blackwell's opinions simply ignore inconvenient facts. In the case of the ballast opinion, Mr. Blackwell relies on visual evidence of track conditions so removed in time from the incident as to be essentially meaningless or which lacks the detail necessary to support his conclusions. Mr. Blackwell himself acknowledged that roadbed conditions are always changing, due to weather or otherwise, and plaintiff has offered no explanation or argument as to how a visual inspection eight months before, or three years after, the pertinent time period provides a meaningful basis for analysis. Indeed, plaintiff's response to defendant's motion makes virtually no effort to identify or defend Mr. Blackwell's methodology at all. Rather, plaintiff relies only on Mr. Blackwell's experience in the area and his interpretation of deposition testimony from the track inspector, Mr. Wallace, taken after Blackwell's expert report was prepared.

In an October 12, 2017 "addendum" to his expert report, Mr. Blackwell's shifts his position to argue that the deposition testimony of Mr. Wallace, the track inspector, shows that defendant did not meet federal standards as to the degree of deflection or dip in the track because Wallace did not take the vertical rail deflection based on the movement of the train into account. This conclusion is based on a forced and inaccurate characterization of what Mr. Wallace said. Contrary to Mr. Blackwell's apparent conclusion and plaintiff's argument, Mr. Wallace's testimony was that he generally did take into account the "pumping" that would occur from the movement of the train in making his calculations.

Further, the fact that Mr. Wallace testified as to his standard approach, as opposed to any specific recollection of inspecting this particular stretch of track, is both unremarkable (the deposition having occurred some three years after the inspection at issue) and not a basis for reaching the conclusion that Mr. Blackwell reached—that the inspection was somehow improper. Similarly, Mr. Blackwell's changed or expanded conclusions as to the adequacy of other track inspections conducted by defendant is based on nothing more than speculation.

The result is that, even if the addendum is considered,[1] it does not lead to opinions which are sufficiently reliable to be admissible when tested against the standards of Daubert and Rule 702. It is not enough to have a knowledgeable expert leap to the conclusions a party would like the jury to be exposed to. Rather, there must be a reliable and identifiable basis for the expert's opinions, grounded in the evidence and in the practices and standards of the particular discipline involved. That basis is lacking as to the proffered opinions of Mr. Blackwell.

The motion to exclude Mr. Blackwell's testimony [Doc. #38] is **GRANTED**. His testimony will be excluded in its entirety.

**IT IS SO ORDERED**.

Dated this 15th day of December, 2017.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE

---

[1] The addendum was submitted long after expiration of the court's deadline for disclosure of expert reports.